R. A. MACFIE, JR. *vs.* KILAUEA SUGAR CO. *et al.*

IN EQUITY.   BEFORE JUDD, C.J.

NOVEMBER, 1883.

A manager and part owner of an incorporated sugar plantation held to be a surety, and not a principal debtor, in a mortgage given by the corporation as security for advances: and therefore entitled to bring suit against the corporation to compel it to pay the debt. or indemnify him.

Demurrer to bill sustained on other grounds, with leave to amend.

DECISION OF JUDD, C.J.

This bill alleges substantially that the plaintiff is the owner of seventy-four and one-half shares of the capital stock of the Kilauea Sugar Co., an incorporated company; that on the 10th February, 1880, plaintiff executed a mortgage upon said shares and others which he then held, in all 149 shares, to the firm of H. Hackfeld & Co. to secure the payment of $110,697.66 according to the tenor of four promissory notes for $27,673.67 each, payable to the order of said mortgagees on the 31st July, of 1881, 1882, 1883 and 1884 respectively. That the first two of said notes have been paid by R. A. Macfie, Sr., of Scotland, and one-half of the shares are now held by him released from the mortgage, under an agreement which is filed. That by the terms of the mortgage the plaintiff also agreed to secure the payment to H. Hackfeld & Co. of one-half of all amounts which might be advanced by them to said Kilauea Sugar Co., and charged up to the plaintiff in account current, until said account current should be closed as provided by the terms of the said mortgage. That plaintiff was, at the time of executing the mortgage, the manager of said Kilauea Sugar Co.'s plantation, and had personal supervision and control of all expenditures on the plantation and of all advances drawn for on H. Hackfeld & Co. That plaintiff's being manager was the sole consideration for his agreeing to secure payment of one-half of said advances and it was understood that plaintiff was to be individually liable only

for advances made while he might be manager. That on the 28th April, 1883, the plaintiff was notified that he had been removed from the office of manager, and upon the 1st May, 1883, that the account current between plaintiff and H. Hackfeld & Co. had been closed and payment demanded of $52,685.76, being 149-300 of the amount due them and being entirely made up of amounts advanced by H. Hackfeld & Co. to the Kilauea Sugar Co. for the purpose of carrying on the plantation, together with interest, commissions and charges, and no part being for the private account or personal use of the plaintiff.

That H. Hackfeld & Co. also from time to time charged the whole sum to the Kilauea Sugar Co. and have not released the said company from their liability to pay same.

That on 30th July last H. Hackfeld & Co. sold and assigned to William Y. Horner, defendant, all their shares and interest in the Kilauea Sugar Co. and also the two unpaid notes of plaintiff for $27,673.67 each, and also all their rights, title and interest in the mortgage securing the notes and also all their claims against the plaintiff under the same, and also all their claims and demands against the Kilauea Sugar Co. for moneys advanced and other charges in account current.

The bill further alleges that the whole amount of said indebtedness of the Kilauea Sugar Co. in account current is due and payable now, that the undertaking of plaintiff to secure the payment of one-half of said amount was a contract of guaranty in favor of H. Hackfeld & Co. and that the debt guaranteed was and is the debt of the Kilauea Sugar Co. and not of the plaintiff. That after demand was made on plaintiff to pay one-half of said amount, plaintiff called on the Kilauea Sugar Co. to pay the same, which the said Company refused to do. That said Company has now sufficient property to pay the amount in full and that plaintiff is ready and willing to pay one-half or any portion of said book debt which may remain unsatisfied after all the property of the corporation has been applied for the payment of the same and exhausted.

The bill prays that the defendant Horner may be enjoined

from bringing suit against plaintiff for any portion of said indebtedness of the Kilauea Sugar Co. upon account current until he has exhausted all remedies he may have against said Company; and that the Kilauea Sugar Co. may be ordered to give plaintiff good and sufficient indemnity against any claim which may be made against him on account of said indebtedness and that said Kilauea Sugar Co. may be enjoined from selling or disposing of their property, except crops, or from mortgaging same until they have provided said indemnity, etc.

To this bill defendants demurred, and argument was had thereon on the 27th October. The defendants contend, in substance, that it does not appear by the mortgage on file that R. A. Macfie, Jr., is a surety, but he is rather a principal debtor to H. Hackfeld & Co. and by assignment now to Horner. If, however, he is a surety, then the relief asked for in his behalf is unknown to equity.

The first point upon which this case hinges is whether the plaintiff is a surety. It is clear that as owner of stock in the Kilauea Sugar Co., an incorporated company, he is not personally liable for the debts of the company unless he has made himself so by the terms of the mortgage. It is also clear that the debt now due on the account current between the agents and the Kilauea Sugar Co., is primarily the debt of the defendant company. It is alleged in the bill that this debt was for advances in money, etc., to carry on and develop the plantation and not for the personal account of the defendant. But we must look to the mortgage to ascertain the nature of the liability of the plaintiff as regards this debt; whether he was an original debtor of H. Hackfeld & Co., and by assignment now of the defendant Horner, or whether he is a surety.

The mortgage recites that the mortgagees have loaned to the mortgagor the sum of $110,697.66, being the purchase money of the stock in the Kilauea Sugar Co., on the mortgagor's promise to secure payment thereof and also one-half of the balance of future expenses of said plantation and interest, etc.

The mortgage further recites that the mortgagor has given H.

Hackfeld & Co. four notes for the amount of the sum of $110,697.66; And the mortgagor covenants to pay the notes and interest, and also all moneys which may become due and owing from the mortgagor to the mortgagees in account current with them, to be stated quarterly, and in such accounts current the mortgagor shall be debited in the first place with one-half of all moneys advanced or paid by the mortgagee from the date of the 26th January, 1880, on account of said plantation and its laborers, rents, taxes, business and expenses with interest, etc., etc., and be credited with one-half of the receipts, etc., and that the account shall be considered due on demand. It is clear from the above extracts from the mortgage that the plaintiff agreed that he should be charged with and that his mortgage should secure one-half the debt of the plantation thereafter accruing, over and above its receipts, and that this debt is made up of moneys advanced on account of said plantation. In short the plaintiff has thus undertaken in writing to secure payment of the debt of another, and has made himself a surety. The debts is one for which the Kilauea Sugar Company is liable, and the bill alleges that H. Hackfeld & Co. also from time to time charged the whole sum to the Kilauea Sugar Co., and have not released them from liability to pay the same.

Having found that the plaintiff is a surety for the debt to the Kilauea Sugar Co., I pass to the question whether he can have the relief prayed for. The debt is now due, as stated by the bill, and demanded of plaintiff and he has in turn demanded payment of the same of the Kilauea Sugar Co., and they have refused payment.

In Story's Equity Jur. Sec. 327, the learned author says, "Sureties, also, are entitled to come into a court of equity, after a debt has become due, to compel the debtor to exonerate them from their liability, by paying the debt. And although the creditor is not bound by his general duty to active diligence in collecting the debt, yet it has been said that a surety, when the debt has become due, may come into equity, and compel the

creditor to sue for and collect the debt from the principal, at least if he will indemnify the creditor against the risk, delay and expense of the suit." And again, Section 639, "Courts of Equity do not stop here. If the debt is due and the creditor does not choose to call upon the debtor for payment, the surety may come into equity by a bill against the creditor and the debtor, and compel the latter to make payment of the debt, so as to exonerate the surety from his responsibility; for it is unreasonable that a man should always have such a cloud hang over him."

Further, Sec. 849, another case of the application of the remedial justice of Courts of Equity by a bill of *Quia timet* is in cases of sureties of debtors and others. "We have already seen that if a surety, after the debt has become due, has any apprehension of loss or injury from the delay of the creditor to enforce the debt against the principal debtor, he may file a bill of this sort to compel the debtor to discharge the debt or other obligation, for which the surety is responsible. Nay, it has been insisted (as we have also seen) that the surety may come into equity and compel the creditor to sue the principal, and collect the debt from him in discharge of the surety, at least, if the latter will undertake to indemnify the creditor for the risk, delay and expense of the suit."

I have examined all the cases cited in support of this text which are available. They are *Wright vs. Simpson*, 6 Vesey, 714, where Lord Eldon says, on 734: "But in late cases, provided there was no risk, delay or expense, as in the case put, of the money in the next room, indemnifying against the consequences of risk, delay and expense, the surety has a right to call upon the creditor to do the most he can for his benefit, and the latter cases have gone further."

In *Nisbit vs. Smith*, 2 Brown, Ch. Rep. 449, Lord Thurlow says: "It is clear and never has been disputed that a surety, generally speaking, may come into this Court and apply for the purpose of compelling the principal debtor for whom he is surety to pay in the money and deliver him from the obligation."

In *King vs. Baldwin,* 2 Johnson's Ch. Rep., 554, Chancellor Kent reviews all the English cases, and says, p. 561: "The surety has a right, on the day the debt is due, to come into chancery and insist on its being put in suit," and further, "I have said, that the surety has a right at any time after the debt is due, to apply to this Court to coerce the creditor to collect his debt." This case went on appeal to the Court of Errors for New York State, and is reported in 17 Johnson, 384. Chief Justice Spencer says: "Courts of Equity when they interpose to compel a creditor, at the instance of a surety, to sue the principal debtor, undoubtedly proceed on the sound and just principle, that it is the duty of the creditor to obtain payment, in the first instance of the principal debtor, and not of the man who is a mere surety that the principal shall pay the debt. The doctrine is, that it is inequitable and unjust for the creditor, by delaying to sue, to expose the surety to the hazards arising from a prolongation of the credit, and that the surety has an equity sufficient to invoke the interposition of the powers of a Court of Chancery for his protection."

*Wayes vs. Ward,* 4 Johnson's Ch. Rep. 132, is an authority to the same effect. See also *Wooldridge vs. Norris,* VI. Law Reports (Eq. Cas.), 410; and *Gray vs. Seckham,* VII. Law Reports (Ch. appeal cases), 680.

In Burge on Suretyship, the writer says: "By the law of England when the liability of the surety has attached in consequence of the default of the principal, the surety—although he has not been sued by the creditor—may apply to a Court of Equity, and compel the principal to relieve him from his liability."

I think sufficient has been quoted above, disclosing ample precedent for a bill of this character, and I recognise the equity of the principal on which it proceeds.

No point was made at the argument that the bill is defective in not alleging that the plaintiff apprehends loss or injury from the delay of Horner to enforce the debt against the Kilauea Sugar Co., and in the respect that the plaintiff should offer to

indemnify Horner for the expense, risk and delay he may suffer by the proceedings to collect the debt of the Kilauea Sugar Co., but I think the bill should be amended in both respects, and sustain the demurrer on this ground, with leave to amend in ten days.

*F. M. Hatch & E. Preston,* for plaintiff.

*P. Neumann, and Smith & Thurston,* for defendants.

Honolulu, November 24th, 1883.